Allen Lee DAVIS, Petitioner-Appellant,

v.

Richard L. DUGGER, Robert A. Butterworth, Respondents-Appellees.

No. 86–3726.

United States Court of Appeals, Eleventh Circuit.

Sept. 28, 1987.

Rehearing and Rehearing En Banc Denied Nov. 17, 1987.

Larry Helm Spalding, Office of the Capital Collateral Representative, Mark Evan Olive, Mike Mello, Billy H. Nolas, Tallahassee, Fla., for petitioner-appellant.

Jim Smith, Atty. Gen., Andrea Hillyer, Ray Markey, Gregory G. Costas, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellees.

Before RONEY, Chief Judge, HILL and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

In this case we must determine whether a district court may dismiss a first federal habeas corpus petition as an abuse of the writ because the petition was filed on the eve of the petitioner's scheduled execution. We conclude that the scheduling of an execution does not, in and of itself, create a basis for dismissing a petition under the abuse of the writ doctrine, codified in Rule 9 of the Rules Governing Section 2254 Cases.

## I

On February 4, 1983, petitioner Allen Lee Davis was convicted of three counts of first-degree murder in connection with the deaths of Nancy Weiler and her two daughters, ages five and ten, at the Weiler home in Duval County, Florida.[1] On March 2, 1983, the trial court accepted the jury's unanimous recommendation and imposed sentences of death by electrocution as to each conviction.[2]

Davis filed timely appeals from his convictions to the Florida Supreme Court. On October 4, 1984, the court issued its opinion rejecting petitioner's challenges to his convictions[3] and upholding petitioner's sentences after reviewing them *sua sponte.*

---

[1.] We need not discuss the historical facts regarding Davis's alleged crimes as they are set out in the Florida Supreme Court's opinion on Davis's direct appeal, *Davis v. State,* 461 So.2d 67 (Fla.1984), and they are not relevant to the issues in this appeal.

[2.] The trial judge found four aggravating circumstances as to all three convictions: (1) under sentence of imprisonment; (2) previous conviction of violent felony; (3) committed during course of a burglary; and (4) heinous, atrocious, or cruel. The court also found a fifth aggravating circumstance, to avoid or prevent arrest, as to petitioner's conviction for murdering the five year old girl.

[3.] Davis raised the following issues in his direct appeal: (1) whether the trial judge abused his discretion in denying Davis's motion for change of venue in light of prejudicial pre-trial publicity; (2) whether the trial judge abused his discretion in denying Davis's request for individual and sequestered voir dire of prospective jurors; (3) whether the trial judge abused his discretion in denying Davis's motion to strike a prospective juror for cause; (4) whether the trial court erred in denying Davis's motion for a mistrial on the basis of the state's redirect examination of Davis's father, during which Davis's father referred to the fact that Davis wanted to take a lie detector test when he was arrested; and (5) whether prosecutorial misconduct during the closing arguments at the guilt phase rendered those proceedings fundamentally unfair.

*Davis v. State,* 461 So.2d 67 (Fla.1984). The court held that the record supported all aggravating circumstances except the "avoid or prevent arrest" circumstance and that the four remaining aggravating circumstances supported petitioner's sentences. As to mitigating evidence, the court ruled that the trial court's declaration that "[t]he Court finds that there are no statutory mitigating factors existent in this cause" was merely inartful drafting of the sentencing order and that "mitigating evidence was not restricted to that listed in section 921.–141." *Id.* at 72. The court therefore affirmed petitioner's convictions and sentences.

After the Florida Supreme Court denied rehearing on January 17, 1985, Davis filed a petition for writ of certiorari in the United States Supreme Court. The Court denied certiorari on July 1, 1985, with two justices dissenting. *Davis v. Florida,* 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985).

Approximately one year later, Davis appeared before the Florida Board of Executive Clemency to request clemency. After holding the request under consideration for almost two months, on August 20, 1986, the Governor of Florida denied Davis's request for clemency and simultaneously issued a death warrant for the week of September 17–23, 1986. Davis's execution was scheduled for 7:00 a.m. on September 23, 1986.

At this point, the Florida Office of the Capital Collateral Representative[4] (CCR) assumed representation of Davis. On September 20, 1986, CCR filed a petition for extraordinary relief and an application for a stay in the Florida Supreme Court. The Florida Supreme Court denied this petition and the motion for a stay on the morning of September 22, 1986. Given that Davis's execution was still scheduled for 7:00 a.m. the next morning, CCR took several steps to attempt to obtain an emergency stay of execution to permit judicial cognizance of Davis's collateral claims.

Davis first filed a Fla.R.Crim.P. 3.850 motion and a motion for a stay of execution in the state trial court. The trial judge held a hearing on the motion at noon on September 22nd and then denied both motions. Davis appealed the denial of his 3.850 motion and motion for a stay to the Florida Supreme Court.

The Florida Supreme Court announced that it would hear oral argument on the appeal the next morning at 6:00 a.m., one hour prior to petitioner's execution. At approximately 10:30 p.m., September 22, Davis filed an application for an emergency stay pending filing of a petition for a writ of certiorari in the United States Supreme Court, based upon the Florida Supreme Court's denial of petitioner's motion for extraordinary relief. Petitioner also filed, in the United States District Court for the Middle District of Florida, a federal habeas corpus petition, a motion for a stay, and a motion to hold the petition in abeyance pending exhaustion of certain claims that were still under consideration by the Florida Supreme Court. At 11:30 p.m., Justice Powell granted a stay of execution until 3:00 p.m. on September 23, 1986 in order to

---

**4.** The Florida legislature created the Office of the Capital Collateral Representative (CCR) by statute effective June 24, 1985. Fla.Stat.Ann. § 27.701 (West Supp.1987). The capital collateral representative was to be appointed by the governor, subject to senate confirmation, from a pool of nominations received from state elected public defenders. *Id.* CCR's statutory responsibility was to:

> [R]epresent, without additional compensation, any person convicted and sentenced to death in [Florida] who is without counsel and who is unable to secure counsel due to his indigency ... for the purpose of instituting and prosecuting *collateral actions challenging the legality of the judgment and sentence im-*

> *posed* against such person in the state courts, federal courts in this state, the United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court.

Fla.Stat.Ann. § 27.702 (West Supp.1987) (emphasis added). CCR is thus clearly restricted by statute to representing capital offenders in *collateral* proceedings. Moreover, CCR could not have begun Davis's representation until after the United States Supreme Court denied certiorari on Davis's direct appeal. *See* Fla.Stat.Ann. § 27.702 (West Ann.1987) ("representation by the capital collateral representative shall commence upon termination of direct appellate proceedings in state *or federal* courts").

allow the full Court to consider Davis's application for a stay of execution.

At 9:30 on the morning of the scheduled execution, the federal district court issued an order denying petitioner's motion for a stay of execution; denying petitioner's motion to hold the petition in abeyance pending exhaustion of unexhausted claims; and denying the petition for federal habeas corpus relief. The court also denied petitioner's request for a certificate of probable cause to appeal and granted petitioner's request to proceed *in forma pauperis.*

In dismissing the habeas petition, *Davis v. Wainwright,* 644 F.Supp. 269 (M.Fla. 1986), District Judge Black, without the benefit of a responsive pleading from the state or an evidentiary hearing, decided that CCR had engaged in a "pattern" of deliberately delaying the filing of a federal habeas corpus petition "until the Governor issues a warrant for execution and very often the filing is delayed until one or two days prior to the scheduled execution," and that "this deliberate delay to achieve a last-minute stay of execution constitutes an abuse of the writ." The court based its conclusion that CCR deliberately delayed filing habeas petitions on: (1) the fact that CCR did not file a habeas petition and an application for a stay of execution in another case that had come before Judge Black, *Stone v. Wainwright,* No. 86–792–Civ–J–14 (M.D.Fla.1986), until four days prior to the petitioner's scheduled execution; (2) the fact that, although Judge Black granted a stay in *Stone,* she had cautioned CCR that "[i]t should not be inferred that the Court will automatically stay an execution because of last-minute filing of a first peti-

tion;" (3) the fact that Davis had moved for stays of execution in four courts in the twenty-four hour period preceding his scheduled execution;[5] and (4) the court's assertion that "there was nearly a two-year period after the decision on the direct appeal in which nothing was filed."[6]

Having found that CCR had deliberately delayed filing Davis's federal habeas corpus petition, the district court concluded that "this abuse of the writ justifies the denial of the application to hold the petition in abeyance pending exhaustion and, even if the petition were exhausted, the denial of the petition in this case." As an alternate ground supporting the denial of habeas relief, the court found that *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) required dismissal of Davis's petition because it contained both exhausted and unexhausted claims.

Approximately one hour after the federal district court denied all relief, the Florida Supreme Court affirmed the denial of Davis's 3.850 motion and denied petitioner's application for an emergency stay of execution. Petitioner moved the federal district court to alter or amend its judgment or for a rehearing because the unexhausted claims in Davis's federal habeas corpus petition were now exhausted.

On the afternoon of September 23, 1986, while the motion to alter or amend judgment or for rehearing was pending in the district court, the United States Supreme Court granted a stay of execution pending the timely filing and disposition of a petition for a writ of certiorari.[7] In a concur-

---

5. These courts were: the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida; the Florida Supreme Court; the United States District Court for the Middle District of Florida; and the United States Supreme Court.

6. This assertion was erroneous. As indicated above, the Florida Supreme Court upheld petitioner's convictions and sentences on October 4, 1984. Davis's subsequent petition for rehearing was denied on January 17, 1985. Davis's petition for a writ of certiorari in the United States Supreme Court was denied on July 1, 1985. In June 1986, Davis made a plea for executive clemency that was denied on August 20, 1986,

when the governor signed a death warrant setting Davis's execution for approximately one month later. Therefore, the period of time "after the decision on the direct appeal in which nothing was filed," consisted of the time between the Supreme Court's denial of certiorari on July 1, 1985 and the plea for executive clemency in June 1986: a period of less than one year.

7. The stay terminates automatically if the petition for a writ of certiorari is denied. If certiorari is granted, the stay will continue pending issuance of the Supreme Court's mandate. *Davis v. Wainwright,* —— U.S. ——, 107 S.Ct. 17, 92 L.Ed.2d 783, 785 (1986).

ring opinion, Justice Powell,[8] apparently unaware of the fact that CCR had received no notice or opportunity to respond to the deliberate delay/abuse of the writ issue,[9] seemed to approve of the district court's dismissal of Davis's petition.[10] He criticized CCR for its handling of Davis's case and a companion case, *Hardwick v. Wainwright:*

> No explanation has been offered either by Davis or Hardwick for waiting more than a month, and until the eve of the execution date, to assert the present claims in any court, state or federal. It is my understanding that the Florida Bar, at least since 1984, has assured state and federal courts that it would provide counsel promptly when needed in capital cases. Although unlikely, it may be that neither Davis nor Hardwick knew that counsel always were available. Nor are we informed as to when counsel were engaged in these cases. In any event, I suggest that counsel owe this Court a duty to explain why no action was taken until the day before the execution date, making it difficult both for the courts below and for this Court to make the carefully considered judgments so essential in capital cases.... If there has been deliberate or inexcusable delay, the appropriate Committee of the Florida Bar will be advised.

*Davis v. Wainwright,* —— U.S. ——, 107 S.Ct. 17, 18, 92 L.Ed.2d 783, 92 L.Ed.2d 785 (1986) (Powell, J., concurring).

**8.** Chief Justice Burger joined in Justice Powell's concurrence.

**9.** As we noted above, the state had not pled abuse of the writ because no pleading from the state was before Judge Black. Judge Black gave no notice that she was considering dismissal as an abuse of the writ; CCR had no opportunity to respond; and Judge Black held no evidentiary hearing.

**10.** Justice Powell wrote that Judge Black "denied the petition and refused to grant a certificate of probable cause.... conclud[ing] that Davis had abused the writ by 'intentionally delaying the raising of grounds for relief.'" 107 S.Ct. at 18. In a footnote to this language, Justice Powell's concurrence indicates that the reader should compare this holding to Rule 9(a) of the Rules Governing Section 2254 Cases. Justice Powell explained Rule 9(a) parenthetically as follows: "a petition may be dismissed if

Later that afternoon, the district court denied petitioner's motion to alter or amend judgment or for rehearing. The court denied as moot petitioner's additional motions for a certificate of probable cause and a certificate to appeal in *forma pauperis.* The court also denied the motion to alter or amend judgment or for rehearing because "[p]etitioner has not presented any authority for the requested relief."

Davis now appeals the district court's denial of his petition for federal habeas corpus relief along with the other motions denied by the district court.[11] After we granted petitioner's application for certificate of probable cause, petitioner moved to supplement the record to include various documents indicating that CCR is grossly overburdened in its responsibility to represent all Florida indigent capital defendants in all collateral proceedings and that, due to understaffing, underfunding, and lack of a sufficient number of experienced attorneys, CCR has been unable since its inception to begin collateral representation of capital inmates except those under pending execution warrants. The state responded that the majority of the supplemental material was self-serving or hearsay and that the materials should not be considered because they had not been before the district court.[12] We ordered this question carried with the appeal on the merits.

the state is 'prejudiced in its ability to respond to the petition by delay in its filing' unless the petitioner shows that it is based on newly-discovered grounds." *Id.* at 18, n. 1.

**11.** Petitioner has also noticed an appeal from the denial of his: (1) application for a stay of execution and to hold petition in abeyance pending exhaustion of state remedies; (2) motion for a stay of execution; (3) applications for a certificate of probable cause before the district court both in its initial order and in its order on petitioner's motion to alter or amend judgment or for rehearing; and (4) motion to alter or amend judgment or for rehearing.

**12.** Respondent also moved to strike the portions of appellant's reply brief that refer to the supplemental materials.

## II

■ At the outset, it is important to note that the district court's denial of petitioner's motion for a stay of execution is not before this court. This issue was rendered moot when the United States Supreme Court stayed petitioner's execution pending disposition of a petition for a writ of certiorari. The Supreme Court's stay is still in effect. We are concerned here, therefore, solely with the district court's dismissal of the federal habeas petition. We conclude that neither the Rules Governing Section 2254 Cases nor judicial precedent supported the dismissal of Davis's petition as an abuse of the writ.

The district court's order is ambiguous as to the legal basis for its holding. The state concedes that the district court could not, and did not, find that Davis's petition was subject to dismissal under the traditional abuse of the writ doctrine [13] embodied in Rule 9(b) of the Rules Governing Section 2254 Cases.[14] Rule 9(b) is expressly limited to "second or successive petition[s]," and the district court recognized that Davis's first petition did not "present the issue of a deliberate delay in the form of a successive petition or deliberate bypass." Thus, Davis's first petition could not have been dismissed under Rule 9(b). Respondent argues, however, that the district court's conclusion that "deliberate delay to achieve a last-minute stay of execution constitutes an abuse of the writ" can be supported by Rule 9(a) of the Rules Governing Section 2254 Cases. Accordingly, we begin with an analysis of Rule 9(a) and then proceed to determine whether the rule was properly applied in this case.

## A

Rule 9(a) is based upon the equitable doctrine of laches. Advisory Committee

---

**13.** Rule 9(b) codifies the abuse of the writ standard of *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). *Paprskar v. Estelle,* 612 F.2d 1003, 1005 (5th Cir.1980), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1981).

**14.** Rule 9(b) provides as follows:

(b) **Successive Petitions.** A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination

---

Note to Rule 9; *Horace v. Wainwright,* 781 F.2d 1558, 1565 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 235, 93 L.Ed.2d 160 (1986); *Hill v. Linahan,* 697 F.2d 1032, 1035 (11th Cir.1983). The rule provides as follows:

(a) **Delayed petitions.** A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

As initially proposed by the Supreme Court, the rule would have included a rebuttable presumption of prejudice to the state where the petition was filed more than five years after the judgment of conviction. *See* H.R. No. 1471, 94th Cong., 2d Sess. 1, 4–5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 2478, 2481. Congress deleted this provision from the rule, however, because "it is unsound policy to require the defendant to overcome a presumption of prejudice and ... the legislation brings Rule 9(a) into conformity with other provisions of law." *Id.*

■ Our cases before and after the enactment of Rule 9(a) have required the state to prove three elements in order to obtain a dismissal under Rule 9(a). First, there must have been an unreasonable delay in filing of the federal habeas petition. *Mayola v. Alabama,* 623 F.2d 992, 999 (5th Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981); *Bouchillon v. Estelle,* 628 F.2d 926, 928 (5th Cir. 1980).[15] Both the equitable doctrine of

---

was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

**15.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

laches and Rule 9(a) are designed to prevent assertion of *stale* claims where the evidence is no longer fresh. *See* Advisory Committee Note to Rule 9. The requirement that the delay be *unreasonable* arises from the fact that delays that do not evince a lack of diligence on petitioner's part in pursuing collateral relief cannot serve as the predicate for a Rule 9(a) dismissal. *See Louis v. Blackburn,* 630 F.2d 1105, 1110 (5th Cir.1980) (Where petitioner filed federal habeas petition within three years of his guilty plea—almost immediately after state supreme court affirmed denial of state habeas petition—district court erred in dismissing on Rule 9(a) ground because "petitioner has been diligent in his efforts to obtain relief"); *United States ex rel. Barksdale v. Blackburn,* 610 F.2d 253, 261 (5th Cir.1980), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981) (despite 9 year delay between conviction and filing federal habeas petition, Rule 9(a) dismissal was improper where, *inter alia,* petitioner had diligently pursued collateral relief during this period). Accordingly, none of our prior decisions upholding Rule 9(a) dismissals have involved delays of less than fifteen years between sentencing and the filing of the federal habeas petition.[16]

Even where the petitioner has not been diligent in his or her pursuit of collateral relief, however, delay alone is insufficient to warrant dismissal under Rule 9(a). *Barksdale,* 610 F.2d at 260; *Horace v. Wainwright,* 781 F.2d 1558, 1565 (11th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 235, 93 L.Ed.2d 160 (1986); *Hill v. Linahan,* 697 F.2d 1032, 1035 (11th Cir.1983); *Baxter v. Estelle,* 614 F.2d 1030, 1034 (5th Cir.1980), *cert. denied,* 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981); *Paprskar v. Estelle,* 612 F.2d 1003, 1007–08 (5th Cir.), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66

L.Ed.2d 111 (1980); *Jackson v. Estelle,* 570 F.2d 546, 547 (5th Cir.1978); *Hamilton v. Watkins,* 436 F.2d 1323, 1326 (5th Cir. 1970). In addition to demonstrating unreasonable delay, the state must: (1) make a "particularized showing. of prejudice;" *Hill,* 697 F.2d at 1035; *Bouchillon v. Estelle,* 628 F.2d 926, 929 (5th Cir.1980); *Paprskar,* 612 F.2d at 1008; *Mayola v. Alabama,* 623 F.2d 992, 1000 (5th Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981); and (2) demonstrate that the prejudice is due to the delay; *Hill,* 697 F.2d at 1035.

If the state proves these elements of a Rule 9(a) defense, the rule provides the petitioner an opportunity to avoid dismissal by demonstrating that the petition is "based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred." Rule 9(a), Rules Governing Section 2254 Cases. *See, e.g., Horace,* 781 F.2d at 1565 (Rule 9(a) dismissal improper where petitioner, due to mental incompetence, lack of funds, and lack of legal assistance, neither knew nor should have known of his right or obligation to bring federal habeas petition); *Henson v. Estelle,* 641 F.2d 250, 253 (5th Cir. Unit A March 1981), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981) (Rule 9(a) dismissal proper where petitioner was "no stranger to courthouses" and knew all facts in connection with guilty plea entered 18 years prior to filing federal habeas petition); *Bouchillon v. Estelle,* 628 F.2d 926, 929 (5th Cir.1980) (Rule 9(a) dismissal proper where petitioner knew all facts forming grounds for federal habeas petition throughout entire period of 27 year delay prior to filing for collateral relief); *Baxter v. Estelle,* 614 F.2d 1030, 1034 (5th Cir.1980), *cert. denied,* 449 U.S.

---

**16.** In *Baxter v. Estelle,* 614 F.2d 1030 (5th Cir. 1980), *cert. denied,* 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981), we upheld a dismissal on Rule 9(a) grounds where the delay between the petitioner's conviction and sentencing and the filing of a federal habeas petition amounted to fifteen years. Our other decisions upholding Rule 9(a) dismissals have all involved more substantial delays. *See, e.g., Mayola v. Alabama,* 623 F.2d 992 (5th Cir.1980), *cert. denied,*

451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981) (16 year delay); *Bouchillon v. Estelle,* 628 F.2d 926 (5th Cir.1980) (28 year delay); *Henson v. Estelle,* 641 F.2d 250 (5th Cir. Unit A March 1981), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981) (18 year delay). We do not, of course, suggest that a Rule 9(a) dismissal could never be appropriate where the delay was less than 15 years.

1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981) (Petitioner's knowledge of all facts upon which habeas claims were based throughout entire period of 15 year delay, considered in light of petitioner's intelligence, education, and familiarity with the criminal justice system, indicates that petitioner has been "sleeping on his rights," and dismissal is appropriate).

### B

From this background discussion, it is apparent that the district court erred in applying Rule 9(a) to Davis's federal habeas petition. In addition to the fact that the delay in this case does not approach the level previously recognized as grounds for a Rule 9(a) dismissal,[17] Davis's conduct does not evince a lack of diligence that would make the delay unreasonable. After the Florida Supreme Court affirmed Davis's convictions and sentences and the United States Supreme Court denied certiorari on Davis's direct appeal, Davis "delayed" for slightly less than one year before making his plea for executive clemency. Davis brought this federal habeas petition within one month after clemency was denied.

Under Fla.R.Crim.P. 3.850, Davis had at least until January 1, 1987 to bring a Florida 3.850 motion.[18] Given that Davis had to exhaust this effective state remedy prior to receiving consideration of his federal habeas petition, see 28 U.S.C. § 2254(b); *Cook v. Florida Parole and Probation Comm.*, 749 F.2d 678 (11th Cir.1985) (per curiam), it would be anomalous to hold that pursuit of collateral relief within the two-year statutory limitations period in Florida might nevertheless constitute unreasonable delay under Rule 9(a) and that a federal court would be justified in refusing to consider the merits of the petition on that basis.

Furthermore, the district court's Rule 9(a) dismissal was in error because the state made no particularized showing of prejudice nor any demonstration that any prejudice was due to petitioner's delay. Respondent concedes that it made no particularized showing of prejudice due to delay,[19] but contends that prejudice may be presumed from the fact that the petition is lengthy and the state could not file a response prior to petitioner's scheduled execution.

Respondent's argument is flawed in that we have held that prejudice may not be presumed. *See, e.g., Mayola v. Alabama,* 623 F.2d 992, 1000 (5th Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981); *Paprskar v. Estelle,* 612 F.2d 1003, 1008 (5th Cir.), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980). Indeed, as we discussed above, Congress expressly rejected as "unsound policy" a proposed provision in Rule 9(a) that would have created a rebuttable presumption of prejudice in certain circumstances.

---

**17.** *See supra* note 16 and accompanying text.

**18.** Fla.R.Crim.P. 3.850 provides in part:

A motion to vacate a sentence which exceeds the limits provided by law may be filed at any time. *No other motion shall be filed or considered pursuant to this rule if filed more than two years after the judgment and sentence become final* unless it alleges (1) the facts upon which the claim is predicated were unknown to the movant or his attorney and could not have been ascertained by the exercise of due diligence, or, (2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.

*Any person whose judgment and sentence become final prior to January 1, 1985, shall have until January 1, 1987, to file a motion in accordance with this rule.*

(emphasis added). Under these provisions, if Davis's judgment and sentence became final when they were imposed by the trial court or when the Florida Supreme Court affirmed on direct appeal, then Davis had until January 1, 1987 to file a 3.850 motion. If the judgment and sentence were not final until the Florida Supreme Court denied rehearing or when the United States Supreme Court denied certiorari, then Davis would have had an even longer period in which Florida would have allowed him to bring a 3.850 motion. Davis in fact filed his federal habeas petition on September 22, 1986.

**19.** Given that the state did not file a responsive pleading in the district court and the court did not hold an evidentiary hearing, respondent could hardly argue to the contrary.

In addition, respondent's argument perverts the requirement that the prejudice be due to the delay. *See Hill v. Linahan,* 697 F.2d 1032 (11th Cir.1983). Respondent basically concedes that, absent the scheduled execution, there would have been no basis for concluding that petitioner unreasonably delayed filing his federal habeas petition, and that a Rule 9(a) dismissal would therefore have been inappropriate if no execution had been set. It was thus the *scheduling of petitioner's execution,* under respondent's analysis, that both made petitioner's delay unreasonable *and* created the prejudice that respondent contends justified the district court's disposition of the habeas petition. *Hill* makes it clear, however, that the prejudice must be due to the *petitioner's delay* and not to some other factor. *Id.* at 1035–36. Rule 9(a) thus provides no basis for dismissing an otherwise timely first federal habeas petition simply because the state, by its own execution scheduling, prejudiced its ability to respond to the merits of the habeas petition.

Given this holding that Rule 9(a) was improperly applied to Davis's petition, we need not discuss whether the district court's dismissal without notice or a hearing abridged the procedural requirements for Rule 9(a) dismissals. *See Hill v. Linahan,* 697 F.2d 1032 (11th Cir.1983). We also do not reach the question of whether a district court may raise a Rule 9(a) defense *sua sponte. See* Rule 11, Rules Governing Section 2254 Cases.

It is important to reiterate that the questions of when a district court must grant either a stay of execution or a certificate of probable cause are not before us in this appeal. *Cf. Barefoot v. Estelle,* 463 U.S. 880, 893, 899, 103 S.Ct. 3383, 3394, 3398, 77 L.Ed.2d 1090 (1983) (certificate of probable cause should issue where petitioner has made "substantial showing of the denial of [a] federal right;" the granting of a stay should reflect presence of substantial grounds upon which relief might be granted); *Fleming v. Kemp,* 794 F.2d 1478, 1481 (11th Cir.1986) (court will grant a stay of execution only if: (1) an issue presented in habeas petition is properly before the court; and (2) the issue presents substan-

tial grounds upon which relief might be granted and cannot be responsibly reviewed by the court prior to the scheduled time for execution). A petitioner who waits until the eve of his or her execution to file a habeas petition necessarily runs the risk that the court will not be able to rule on the stay application prior to the execution because it lacks sufficient time to determine whether the habeas petition presents substantial grounds upon which relief might be granted. We hold only that the fact that a scheduled execution is imminent does not itself create a basis for dismissing the petition as an abuse of the writ.

### III

As an alternative ground for dismissing Davis's petition, the district court concluded that the petition contained both exhausted and unexhausted claims and must therefore be dismissed as "mixed." Although *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), held that a district court must dismiss habeas petitions containing both exhausted and unexhausted claims, the exhaustion requirement is not jurisdictional, *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984), and may be waived by the state, *Granberry v. Greer,* —— U.S. ——, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). The district court therefore erred in dismissing the habeas petition for failure to exhaust state remedies before the state responded and either set out an exhaustion defense or waived exhaustion. *Ali v. Florida,* 777 F.2d 1489 (11th Cir. 1985) (per curiam); *David v. Spears,* 739 F.2d 634, slip op. at 2 (11th Cir. July 17, 1984) (unpublished opinion).

We therefore reverse the district court's order dismissing Davis's habeas petition and remand the case for consideration on the merits. The motion to supplement the record and the motion to strike portions of appellant's reply brief are dismissed as moot.

REVERSED and REMANDED.

HILL, Circuit Judge, specially concurring:

I concur in the judgment announced by our majority's opinion and most of what is said. This petitioner was not guilty of the deliberate delay which would support dismissal under Rule 9(a) of the rules governing section 2254 cases, and exhaustion of state remedies was achieved before final action by the district court.

Petitioner has acted most diligently compared with others we have seen. I should not count against him the time during which he withdrew from the litigation arena and sought executive clemency. I should not fault petitioner for refraining from prejudicing his petition for clemency by, pending its resolution, suing the state pursuant to section 2254. We criticize counsel for strategic blunders; this would have been one.

I find, though, that my reasoning ability is inadequate to the majority's resolution of the prejudice issue presented by the scheduling of the execution. At the time the governor issued the warrant, the conviction and sentence were final. Appeal had been exhausted. No collateral attack was pending. I cannot grasp the notion that, as the majority asserts, "... the state, by its own execution scheduling, prejudiced its ability to respond to the merits of the habeas petition." When the execution of this sentence was scheduled, there was no habeas petition in existence, so the state was not prejudicing its ability to respond to anything.

Had it appeared that petitioner, with collateral attack prepared at leisure, deliberately kept it concealed, to be "sprung" upon the court whenever a warrant issued and only moments, hours, or perhaps days before execution, a 9(a) prejudicial delay might well have been found. As I read the majority opinion, under such circumstances, the state would have authored its own prejudice, and this, I confess, I cannot comprehend, in the context of this case.

Clever and deliberate delay *for the purpose* of attempting to "overwhelm" a conscientious judge may well be deliberate, prejudicial delay justifying dismissal;[1] should a state's warrant authority (Chief Executive or Trial Judge) deliberately step up execution schedules to the point that habeas court judges might be in danger of overlooking valid grounds, such a practice may well justify stays of execution in cases ultimately found to have no merit. Neither the petitioner nor the state is shown to have dealt improperly with reaction to, or scheduling of, the execution in this case.

We need not resolve, in this case, more than that nothing before the district judge supported a holding that petitioner was guilty of deliberate delay. Dismissal was error.

I concur in the reversal.

---

1. Such calculated, deliberate delay could, I submit, invoke Rule 9(a) even though it should occur within the period of time allowed by Fla.R.Crim.P. 3.850 for bringing collateral attack. The second paragraph of Part B of the majority opinion appears to say that unless a petitioner delays filing beyond the maximum time Florida allows, we will not question his diligence. By distortion, we convert the *maximum* into a *minimum*.